Good morning, everyone. Please be seated. Before we begin calling any cases, I will advise the attorneys that each side will have approximately 15 minutes to present argument, and from that the appellant may save up some time for rebuttal. So we will call the first case. Case number 12-2161, Marcellina Guzman v. 7513 West Madison Street. And if both attorneys would identify yourselves for the record. Kevin After. Mr. After. All right, thank you. Mr. After. You may proceed. I might request to save three or four minutes for rebuttal, if necessary. Sure. Yes. May it please the court, your honors, counsel, and guests. This case presents to you for simply answering a certified question pursuant to Rule 308, come from across the street regarding a guarantee fund issue. As we know, you didn't know before this litigation got to you, you certainly know now, a constitutional casualty company went into liquidation maybe a year ago or more, and out of the liquidation of constitutional casualty came the guarantee fund's presence in many pieces of litigation, one of which is this particular dram shop piece of litigation. Now, there are and have been for many, many years several pieces of guarantee fund related litigation, appellate opinions, Supreme Court opinions, both prior to and after the 1997 amendment, which is really the subject of the dispute today. Well, Roth was written right after the amendment. How does this case, how is it different from Roth? They said if there's other insurance, whether it's health insurance, you know, uninsured, it gets deducted from the amount that the fund is liable to pay. How is that case different? Well, Roth is a case where, and I'm not here arguing for an overturning or ignoring of Roth. Quite frankly, this case is based upon the dram shop statute, a statutory and penal piece of litigation created virtually 80 years ago in order to both, well, primarily in order to protect or offer some compensation to the victims of a liquor related incident. And Roth, in Roth, your decision was that group health benefits offset the amount of the claim, right? Our position is that, and the fund's position, I should say, is that based on Roth, and I believe this is the substance of Judge Johnson's opinion at the trial court level, although she didn't go into specifics, she just directed us as to what to write on the order asking for certification over here, is that the value of the plaintiff's claim in the dram shop portion of their litigation is the $58,000 and change, which is the statutory number from 2009. Both sides agree that that is the maximum amount that any plaintiff could receive. The difference between this situation and the Roth situation is, well, there are several. First of all, in the case before you, in the Guzman case, we're talking about a separate and distinct party altogether. We're talking about, we're not talking about first party insurance. We're not even talking about a negligence action. We're talking about a statutory based action. All right. The statute says same loss and injury. Yes. That takes care of that. Well, I'm certainly not arguing that the set-offs don't apply. Okay. My argument, and if anything, I took 15 pages to say what I should have said probably in about four, and I think I do a better job of saying it, quite frankly, in my reply, that there's nothing in the amended 546A from 97, or its virtually inexistent legislative history, which unfortunately, we don't have to help us either, that says that the way that a DRAM case is calculated for purposes of value, for what it's worth, is to be changed. And in the DRAM shop statute, starting with the, back in the 30s and 40s, there's an important case called Kerr versus Watson from 72 out of the second district that's cited later in the fifth district. The DRAM situation, you take the case and you send it to trial. And the jury decides what the injuries are and what the plaintiffs are entitled to receive. From there, issues of law move into the verdict's path, and the judge then collects information on set-offs, and those act to reduce the verdict. And we also have the DRAM shop statute, which limits the maximum, limits to a maximum adjusted every year by the CPU, but for here we're talking about $58,000 and change, as the maximum amount that any plaintiff can get. So if your client got a million dollar judgment from the jury, the trial court would reduce that to $58,000 minus any other set-offs? That's what the defendant argues. And what I argue is that if my client got, well, of my three clients here, Ms. Myers is the one most seriously injured, so let's use Myers as an example. Ms. Myers takes her case to trial and she gets $750,000. What I believe is the law, and what prior DRAM shop cases with or without the involvement of the fund have said, is that from that verdict, she will have reduced any money she's gotten from other sources of income. That doesn't make exact sense. You'd have to have the fund involved. Well, offset from her verdict would be any money that she's gotten from other sources, and she's also subject to the statutory limitation on the value of the DRAM fund. So she could get $5 million if she's recovered $300,000, or in this case, $250,000 from her own underinsured policy, and another $113,000, $120,000 from her health insurance policy, that $337,000 would be subtracted from her jury verdict. And if that jury verdict is somewhere between something more than zero, she is entitled to get up to $58,000 and change, up to the 2009 limit, if a verdict is entered against the DRAM period. And that's the calculation that we're looking for. And there's nothing in the amended act that says anything about any attempt to adjust the DRAM laws, or statute, or the method of calculation of the DRAM Act. And the goal, I wasn't there, I wanted to testify. What is, the statute speaks in terms of the fund's obligation to be reduced. If you got a million dollar judgment, the fund's obligation would not be a million dollars. It would be $58,000. So if the fund's obligation is reduced by the set-off, doesn't that logically mean that that $58,000 is reduced by whatever is collected? Well, the statute talks of insurance policies. And I think it matters in this case, because I've got a million dollar insurance policy that is insuring this bar. Aren't there two policies for the bar? Well, the defendant says there's interrogatories. There was a one CGL policy for a million. OK. I was thinking of that Buhler or something. That was one where there was two policies. The Bukema case had two separate policies. That's actually a pre-amended act as well. Yes, yes, yes. Well, maybe you can help us by explaining what this section 537.2 implies. It says the fund's obligation under section 57.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy. Now, how does that relate to this case? What does that mean? Well, the fund's obligation is to act to protect an innocent claimant and, quite frankly, an insurer who did nothing wrong, but either find themselves in the wrong place at the wrong time or purchase insurance with a company who wasn't able to stay in business for whatever reason. Specifically, though, what is the fund's obligation? This is what 546 says. 546 says the fund's obligation, and this is the other insurance provision that we're laboring under today, it says the fund's obligation under section 537.2 shall be reduced. So what do you believe the fund's obligation under section 537.2 is? I believe the fund's obligation is to act as though they are, in this case, the bar. Their obligation is reduced by several things. You cannot answer my question. What is their obligation? Refer to 537.2 and tell me what their obligation is, plus. Their obligation is to pay up to the limits of the Dram Shop Act. Perhaps we're, I'm not catching your, I know what you're asking. That's the case. Not in every case, of course, but in this particular case, you have a, you've got an uninsured Dram Shop and a drunk driver who injures three plaintiffs, okay? These three plaintiffs get money from other sources, and there's no issue that those monies, that those setoffs are out there, all right? And what we are seeking is calculation of the setoffs and inclusion of the setoffs after the Dram case has been decided and not before. And there's nothing in the Guarantee Fund Act, whether it's before the amendment or after the amendment. Well, what about this section of the obligation of the fund, 537.2, where they do say it shall not apply to any workers' compensation claim? So is there a suggestion there that because they specifically made the point when they were drafting this to exclude workers' comp claims, that had they wished to exclude the Dram Shop, they could have said so? Well, I did consider that, Your Honor. I don't know the Latin principle, but whatever that, I mean, this is sort of a statutory construction case. Yes, it is. And my inclination there was, after reading several of the workers' comp cases, is with the workers' comp case, you just don't know exactly what the full exposure is going to be. If you have a permanent total loss, you could have somebody collecting two-thirds of their pay for 40, 50 years if they're unfortunate enough to be injured at a very young age. And then the legislature, I think, simply decided to put the $300,000 cap in place in a situation like that's just not fair. We just don't know. We don't know how long the person's going to live. We don't know if they're going to get better, and so on and so forth. I think the arguments of the contrary works as well. If the fund wanted to specifically accept EXCEPT Dram coverage from, they would have said so. Yeah. And we've all read this statute. I've read it. I've probably read it 100 times. Mr. Griffin, I can guarantee you, has read it 1,000 times. He's argued it probably 1,000 times more than I have. Well, what I would say crystallizes this 308. It was certified because there's a substantial difference of opinion. What are those two? I mean, what is there that, you know, somehow the trial court certified this and we allowed it. I'm just questioning what was, you know, if you were to crystallize the substantial difference of opinion with one or two cases, how would you do that now? What would you cite? We'll ask Mr. Griffin the same thing. Well, I would cite Roth says group health insurance. I would cite the fact that there's no law at all that says that the presence of the guarantee fund takes this case out of a 50, 60, 70-year-old long calculation of Dram case. And the reason for the amendment in 97, I would be surprised to hear to the contrary, was simply a concern of double recovery. There is no double recovery in a situation like this. Because the Dram is a statutory creature and... Well, I'll be honest with you. I started arguing contribution act in my brief and as I'm doing it, it's not the strongest part of the brief. Quite frankly, the strongest part of the brief is simply that, the strongest part of the argument, is that there is no double recovery in a situation where the jury takes the case to trial. They decide exactly what the cases were. This could help me, this could hurt me. If they take my Mr. Guzman, who had a dominant distal radius fracture in surgery, they take his case to trial. If I take his case to trial, the jury says it's worth $65,000. Well, I'm stuck with his offset of 50 and he's getting 15. And now the jury has decided the value of his case, his offsets apply pursuant to the act and whether or not they would even apply under Hopkins and those other contribution act cases doesn't even matter because you've got the 546 of the Guarantee Fund Act that says that we're now offsetting by other recovered funds. And there's another case that has been moving along in the southern part of the state where the Guarantee Fund and plaintiff's attorneys are at odds over this issue also. And the judge was made aware of that, hence our request for a 308 certification. Simply, Judge, when we sat before Judge Flanagan and it was with Judge Johnson who ultimately ruled on the motion, I had a case where I had two plaintiffs. If I'm going to lose this, my two clients are going to get $8,400, $8,600, and one lady who isn't going to get any more money at all. So the last thing I wanted to do was spend $15,000 on doctor's depositions and try a case where I had nothing. So we thought that was the smart decision. And it was a collective decision between Mary Beth O'Brien, who represented the fund at the time, and me. So hopefully that answers your question there. I did find it ironic in closing that the Hazeman versus White case, which is a Supreme Court case, was cited by Judge Johnson against me in addition to Roth at the lower court level where, as the Hazeman language talks again about policy, the insurance policy, and not the value of the claim necessarily. And we're talking about, in this case, a million dollar policy of insurance. Now, I think I've made myself clear that that's not what my expectation would be were I successful at the appellate court level and successful at trial, or anywhere else for that matter. I would, of course, be subject to the limits not only of the Guarantee Fund Act's maximum, but less than that, I'd be subject to the limits of the Dram Shop Act. But there is nothing in the changes made to the act in 1997, and nothing in the legislative history, and nothing that's happened in 15 years of case law that takes this case out of the regular Dram Shop situation where you try the case, get the value of the case, the judge, as a matter of law, reduces the setoffs, and then what you have left is what you have left. What case says what you just said? After 1997. After 97, as of yet, the cases I cited to you are before 97. I have an unpublished, I have a recent 23 decision, which I mentioned only by way of dicta in the related case, that cites those cases as the proper methodology for calculating a Dram Shop loss. Well, let's do the calculation, OK? Let's say that you have a loss, and let's say, as you said, it was $750,000. That's what your jury report is, OK? How do you go from there? Tell me how you do the calculations. Well, $750,000, of course, assumes an award against the bar. From there, the trial judge will be informed of what other monies has the plaintiff received. And in this case, she received a total of $250,000 of underinsured motorist and bodily injury money, and then another $120,000, $130,000 in health insurance money. So under Roth, that number, I believe, is $337,000 something. So subtract the $337,000 from the $750,000, and that leaves $415,000 to bring in one of my calculus driven sons to do this, right? And as a plaintiff's attorney, I specialize in dividing by 3, but we can do it to do the math. So that math, however, doesn't matter because the dram shop statute says I maxed out at 58. OK, so here's where we're at, though. The question is, do you subtract the set-offs from the jury verdict, or do you subtract the set-offs from the dram shop limitation? That's where we're at. And so tell me how you square the calculation that you just did with 546. And what it really comes down to is the term, the funds obligation, which is why I asked you the earlier questions. Do you subtract the set-offs from the funds obligation under 537.2, or do you subtract the set-offs from the funds obligation pursuant to the dram shop dam? Isn't that where we're at? That's the whole, yeah, that's really the whole issue. All right, because it seemed to be that when you said in the beginning of your argument that you made the better argument in your reply brief, and I agree with you, but it seemed to me that you started to back away from that in this argument. I mean, where's the authority that tells us what the starting figure is? And that's why I asked you about 537.2. What's the starting figure? The starting figure, the authority for the starting figure comes from cases that have emanated from the act. And I did not cite to you cases that have been ruled on. The Dram Shop Act? The Dram Shop Act, I beg your pardon. And I don't have a case to present you with that has been decided since the amendment of 546 from 1997. That was a question that I was asked a moment ago. Now, give me a case from after the act was amended that says your calculation of the Dram Shop. Just talk about the statute. What does the statute tell us, what the starting figure is? Is the starting figure $58,000, or is the starting figure that million dollar number? Or if we bring the guarantee fund into it, is the starting figure $300,000? Where do we subtract the set-offs from? The Dram Shop Act says the starting figure is the verdict. Well, if it, OK, go ahead. And from the verdict, you then apply set-offs. And then what do you do? And then you're left with an amount that is either zero, which sends the plaintiff home, and the plaintiff knows before they try the case what they have, they know what their set-offs are, so they know what they're facing. An amount between zero and the statutory limitation for Dram, which would be a collectible amount for them. Or if they recover an amount in excess of the statutory limitation for Dram, that amount would have to be reduced by statute to the maximum limit under the Dram Act. Here's what I'm wrestling with, your calculation. You come in with your $750 million, whatever it is, and you're deducting these set-offs. But this 546 says the set-offs are to be deducted against the insurance company's obligation. And from what I'm seeing here, the obligation is actually limited to $58,000. So in order for that phrase to be meaningless, the actual obligation of the insurance company is really where the deductions have to take place. Am I off base there? Well, intelligent minds certainly differ as to, and they do in this case, as to one or two words. Oftentimes, that's what leads us into years of litigation. Why many of us have jobs. And I don't mean for that to sound as sarcastic as it came out, please. But it keeps us all busy. All right, well, why don't you sum up? We have another case, and we haven't heard from your opponent yet. And you will have some time for rebuttal. Generally, I've made the point to you, I believe, that there's nothing in the amended act that does anything to change the, in the Amended Guarantee Fund Act, that does anything to change the methodology of the Dram Shop Act. And to allow a set off in this type of a situation leaves, it completely eliminates the reason to have the Dram Shop Act. And it's not even applied fairly. If I was a victim of an automobile collision and I had $50,000 of, or $75,000 or $100,000 of under-insurance under the defendant's position, and the bar becomes, the bar carrier is insolvent, then I have no Dram claim. Yet if I only had $20,000 of under-insurance and no health insurance, I would have a viable Dram claim for $30,000. I think the application of that interpretation is illogical. And it doesn't move to protect the public, which was the initial reason for the Dram Shop Act in the first place, as well as the Guarantee Fund Act. It does a better job of protecting the insured, for sure. Well, it certainly does a better job of protecting the insured. There may be some language in the act that reduces the liability of the insured if with an insolvent carrier, which would keep a successful plaintiff from becoming a bar owner if they, whether or not they wanted to be. However, my plaintiffs aren't interested in anything other than compensation in addition to their under-insured motors plus their health insurance benefits. All right. Thank you. Mr. Griffin. May it please the Court, Hugh Griffin for the defendant,  You covered a lot of the ground I was going to cover, but to get right to the basic proposition, what does Section 546 say? And what it says is that any other insurance arising out of the same back injury or loss, and there's no dispute here that all this insurance falls within that umbrella, the fund's obligation and the insurance liability should be reduced by that amount. Now, in a dram shop case, the fund's obligation, the insurance liability, is either going to be the verdict or the cap, whichever is less. That's the law. That's the obligation. It's a $750,000 verdict. That's not the fund's obligation. That's not the insured's liability. There's no owing of that higher verdict. What's owed, what the obligation is, is necessarily going to be the cap. And under Roth and all the cases that we cited in the brief, for better or for worse, the legislature has done a balancing, if you will. And what they've said is, whatever the fund owes, whatever the insolvent carrier would owe, and in this case, the insolvent carrier, the most it would owe would be $58,000. That's the fund obligation. But if there's other insurance available from whatever source, as long as it's a claim coming out of the same back injury or loss, we will reduce the fund's obligation by that amount. Well, what about the traditional authority that kind of sets the DRAM SHOP Act apart from all these other what we would traditionally call claims, backs, injury, or loss? I mean, hasn't there been Supreme Court language that kind of suggests that this is, well, it's not a tort. We know that. Right? Right. So I mean, is there a difference there? Does that matter, that it's not really, it's never been coupled together with claims such as a negligence action or any, you know, same backs, injury, or loss? Are they referring to, I mean, does that really encompass the DRAM SHOP Act? What? That's your basic position. Any other interpretation would be. Well, any other backs, injury, or loss, that's telling you what other insurance you consider. You'll recall in Roth, the prior cases that said, hey, you don't consider any other insurance unless it was also DRAM SHOP insurance. Otherwise, don't even talk to me about a reduction. And then the legislature went in with this broader language. And as you concurred in Roth, that covers the waterfront of other insurance. Now, if you're saying, I think what you may be saying is, if there was no insolvency, if constitution didn't, was still here, and none of this occurred, I mean, yeah, things would be set off a lot differently. But it isn't here, and the fund is here. And so when the fund is here, it's another ballgame. Take Roth. That was a $20,000 settlement of the policy. Then after that happened, the company went insolvent. And then this fund came in and said, well, look, you've got $128,000 of medical insurance recovery. And that falls within the ambit of the new act. That comes off the $20,000 under the express language of section 446. And you said yes, and there was a zero recovery. Now, if there hadn't been an insolvency, that $20,000 would have been owed. An insurance company that settles for $20,000 can't come in and say, hey, by the way, you've got some medical insurance here. I'm not paying you the 20. I mean, it is different. It doesn't always put everybody into the status quo that they would have had absent the insolvency. And again, in this case, even with the correct application of the rules, the fund will owe over $8,000 to two of the plaintiffs that would not have been available if there was no fund. It's just that what the legislature decided is if there's other insurance out there for whatever source, we're going to apply that. I mean, don't forget the legislature's trying to protect the plaintiffs, the insurance, and the insurance buying public of the state of Illinois. Most of the cases have recognized fund and provide the fund's assets. And whether you agree with how they did it or not, that's how they've done it. Let me tell you what's causing me a problem. And maybe you can bring me through it, because I don't even think the plaintiff was on the same page as I was. And I was actually trying to help him. Here's what's causing me a problem. And maybe you have the answer. Section 546 says, under other insurance, it says the fund's obligation under Section 537-2 shall be reduced by other recoveries. It doesn't say the fund's obligation under Section 537.2 or the Dram Shop Act shall be reduced. And if you go to 537-2, it doesn't mention the Dram Shop Act. In fact, the fund's obligation under 537.2 is $300,000 or the policy, whichever is less. Or the obligation. But it doesn't say that. I mean, if it does, that's fine. I need someone to show me that. What it says is the fund's obligation under 537.2. And the way I read 537.2 is the fund's obligation is the lesser amount of the policy limit or $300,000. It doesn't say, or any other statutory cap that may apply. So my question is, and they could have said that. They could have said the fund's obligation is $300,000 or any other statutory cap that is less. But it doesn't say that. It just says $300,000. So since it doesn't mention the Dram Shop Act or any other statutory cap, why isn't the appropriate calculation $300,000 less other insurance collective? And if that number is still above $58,000, why don't they get the $58,000? Judge, 537.2 is the covered claim definition. It says, first of all, you've got to have a covered claim. And we all agree this is a covered claim. And it says, are there limits to what you have to pay on that claim? Well, yeah, there are. Where does it say that? It says the policy limits or $300,000. But the claims remains the claim. If we take a case to trial and it comes back for $10,000 against the insured of the insolvent carrier, the fund owes $10,000. That's the claim. That's the claim. They don't owe the higher limits. They don't owe the cap in the guarantee fund. They pay the claim. That's just saying we won't pay in all claims because if it exceeds our policy limit, we're not going to pay it. If it exceeds our cap, we're not going to pay it. But we pay covered claims. It doesn't try to define the whole gamut of statutory claims. It could be broader common law claims. It just says we will pay the claim. Covered, here the claim. The maximum claim that could be here, we all agree, is $58,000. That's the covered claim. That's the obligation. So 537.2 isn't imposing an obligation on the fund. It's putting some caps in it. But it's not imposing an obligation. As I say, the verdict could come in at $5,000. In this case, we don't know. But that's all that would be owed. You wouldn't go back to 537.2 and say, well, wait a minute. It's underneath these caps. You've got to pay the higher amount. Or it's underneath the policy limit. You have to pay the higher amount. You pay the claim. And here we all agree that maximum claim, and that's what we're proceeding under, an assumption that the verdict is going to be higher than the cap, the maximum amount of the claim that could ever be owed by the fund is $58,000. I mean, the statute, you'd have to redraft Section 546, it seems to me, to say plaintiffs' other insurance recoveries come off their damages, or off the verdict, or off the policy limits. No, it's off the obligation of the fund. It's off the liability that the insured gets the same reduction. The liability of the insured is reduced in the same amount. And again, so the covered claim, the amount of it, we don't know until there's been a finding of liability. And in many cases, that will be way less than the statutory cap, and way less than the policy limits. But that remains, that's the only obligation that remains for either the insured or the fund. And under the plain language of Section 546, that's what gets reduced. Again, it's a legislature's determination of how they feel all interests involved are best served. Anything further, Mr. Griffin? Unless there's any questions, we would respectfully ask the court to affirm and answer the question in the affirmative. Thank you. Thank you very much. Mr. After, final word. Our position, really, to sum up, is that we believe it is a bold leap of faith made without statutory or common law authority for the fund to say that the value of plaintiff's claims are X. The value of plaintiff's claims are what the juries say they're worth, subject to any laws of the state. You have a plaintiff who's injured by a drunk driver. They do what they can do. They get money that they can get. Then they try their case against the bar, knowing full well, if their lawyer is paying attention to the law, that they're not going to double recover. And if they have not been fully compensated based upon what the jury says their claim is worth, and they are presenting the balance of their claim against an insolvent carrier that is covered by the fund, then they ought be entitled up to the limit of the statute. And there's a reason why, when the Dram Shop Act was written, there were certain amounts picked. Why the amounts were, I wasn't around in 1934. I guess I'm happy to say. My father tells me I should be happy to say. And those numbers go up with the CPU, as we know, small amounts. But the Dram Shop Act is not meant to provide millions and millions of dollars, even in the most horrific of incidents. And what the fund is arguing, in this case, is that if I present, or my client presents to them, a Dram Shop claim, that claim is automatically worth no more than what the statute says it's worth on the day of the loss. Forget about the set-offs. And we don't interpret 546 before or after 1997 as saying that. We're asking the court to follow the procedure that has been followed for many years in Dram cases, have a jury calculate what the plaintiff's losses are, and whether or not they are entitled to recover anything, quite frankly, from the tavern or the alcohol provider. And then they have statutory limitations and set-offs that will be dealt with after the jury has rendered its verdict. All right. Thank you. The case was well-argued and well-briefed. And we will take it under advisement.